IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| EDWARD G. RAHLL & SONS, INC., | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 25-2531-BAH |
| EVERFRESH FARMS, LLC, ET AL., | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Edward G. Rahll & Sons Inc. ("Plaintiff") brought suit against Everfresh Farms, LLC ("Everfresh"), Emmanuel Toutsis, and Angelo Tom Toutsis (collectively "Defendants"), alleging claims pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., arising from Defendants' failure to pay for produce. ECF 1 (complaint). Pending before the Court is Plaintiff's motion for default judgment. ECF 15. The motion includes a memorandum of law, and exhibits in support of the motion were separately filed at ECF 16 and ECF 17.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. See Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Plaintiff's motion for default judgment is **GRANTED**.

## I.   BACKGROUND

Plaintiff, a Maryland corporation, and Everfresh, a Maryland limited liability company, are in the respective businesses of selling and buying wholesale quantities of produce. ECF 1, at 2 ¶¶ 3–4. Emmanuel and Angelo Tom Toutsis are officers, members, and managers of Everfresh.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

*Id.* at 2–3 ¶¶ 5–6. According to Plaintiff, it sold and delivered produce worth $77,346.75 to Everfresh between May 17, 2025, and July 12, 2025. *Id.* at 3 ¶ 9. Everfresh accepted the produce but failed to pay for it when payment was due. *Id.* at 3–4 ¶¶ 10, 12. Upon accepting the produce, "Plaintiff became a beneficiary in a statutory trust under PACA . . . , which is designed to assure payment to produce suppliers." *Id.* at 3 ¶ 10. Plaintiff also "preserved its interest" in the trust "by delivering to Everfresh invoices or other billing statements . . . containing the requisite statutory language" under PACA and "remains a beneficiary of the [trust] until full payment is made." *Id.* at 3–4 ¶¶ 11, 13. According to Plaintiff, "Defendants' failure and apparent inability to pay Plaintiff demonstrates that Defendants are failing to maintain sufficient assets in the statutory trust to pay Plaintiffs and are dissipating trust assets." *Id.* at 4 ¶ 17.

On August 4, 2025, Plaintiff filed the complaint. ECF 1. After Defendants were served and failed to respond to the complaint, Plaintiff moved for the Clerk to enter default on October 15, 2025. ECF 7 through ECF 9 (summonses returned executed); ECF 10 (motion for Clerk's entry of default). The Clerk entered default as to all Defendants on October 17, 2025. ECF 11 (entry of default); ECF 12 through ECF 14 (notices of default). On December 9, 2025, Plaintiff filed its motion for default judgment, which is now ripe for disposition. ECF 15.

## II.    **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

2

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). A plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g., Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

With respect to liability, the Court takes as true all well-pleaded facts in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) in the context of default judgments. *See, e.g., Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement" is insufficient to award default judgment. *Id.* ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted." (internal quotation omitted)). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Ryan*, 253 F.3d at 780. "The party moving for default judgment must still show that the defaulted party was properly served, . . . and that the 'unchallenged factual allegations constitute a legitimate cause of action.'"

3

*Harris v. Blue Ridge Health Servs., Inc.*, 388 F. Supp. 3d 633, 637–38 (M.D.N.C. 2019) (first citing *Md. State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996); and then quoting *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010)).

If the complaint avers sufficient facts from which the Court may find liability, the Court next turns to damages. *See Ryan*, 253 F.3d at 780–81. The Court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Damages are restricted to that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

## III.   ANALYSIS

Before analyzing Defendants' liability, the Court addresses two threshold matters. First, the Court finds that Defendants were properly served and failed to file responsive pleadings. *See* ECF 7 (summons executed on Angelo Tom Toutsis); ECF 8 (summons executed on Everfresh); ECF 9 (summons executed on Emmanuel Toutsis). Second, the Court finds it has subject matter jurisdiction over this PACA action pursuant to 7 U.S.C. § 499e. *See* 7 U.S.C. § 499e(c)(5) ("The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust . . . .").

### A.   Violation of PACA by Everfresh (Counts 1, 2, and 3)

Counts 1 through 3 of the complaint allege that Everfresh violated PACA by failing to pay trust funds and make prompt payment to Plaintiff. ECF 1, at 4–6. PACA, "which was enacted in 1930 to suppress unfair and fraudulent business practices in the marketing of perishable

4

commodities, was amended in 1984 to provide unique credit protection to sellers of perishable agricultural commodities." *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 594 (4th Cir. 2010). "Because sellers of perishable commodities had a need to move their inventories quickly, they were often required to become unsecured creditors of their purchasers, whose credit they were often unable to verify." *Id.* "As these sellers of perishable commodities increasingly suffered the risk of the uncollectability of amounts owed by the purchasers, especially because the purchasers gave superior security interests to their lenders, Congress enacted the 1984 amendments to protect the commodities sellers by giving them a priority position over even secured creditors." *Id.* at 594–95.

"The 1984 amendments create, upon the sale of perishable agricultural commodities, a trust for the benefit of the unpaid sellers of the commodities on (1) the commodities, (2) the inventory or products derived from them, and (3) the proceeds of the inventory or products." *Id.* at 595 (citing 7 U.S.C. § 499e(c)(1)–(2)). "As amended, PACA requires that purchasers of perishable agricultural commodities maintain the trust by retaining the commodities or their proceeds until the commodities sellers are paid, and it makes it unlawful to 'fail to maintain the trust as required.'" *Id.* (citing 7 U.S.C. § 499b(4)).

"A trust beneficiary may [ ] seek to enforce payment from the trust in a federal district court." *Produce Source Partners, Inc. v. 7-Eleven, Inc.*, No. 3:24CV55, 2025 WL 594295, at *7 (E.D. Va. Feb. 24, 2025) (citation omitted). "To become a valid PACA trust beneficiary: (1) the produce in question must be perishable agricultural commodities; (2) the commodities must have been received by a commission merchant, a dealer, or broker; and (3) the claimant must have provided written notice of its intent to preserve its rights under PACA within 30 days after payment became due." *Id.* (citation modified).

PACA defines "perishable agricultural commodities" as "[w]hether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A). "Buyers that receive or contract to receive at least 2,000 pounds of produce in any day, in interstate or foreign commerce, are considered 'dealers' under and are subject to the PACA." *Coastal Sunbelt Produce, LLC v. Saldivar & Assocs., Inc.*, No. 1:16CV449, 2016 WL 5661558, at *3 (E.D. Va. Sept. 1, 2016), *report and recommendation adopted*, No. 116CV00449GBLTCB, 2016 WL 5662019 (E.D. Va. Sept. 29, 2016). "In order to gain entitlement to the benefits of the trust, a seller must give a dealer certain written notices stating the seller's intent to preserve its trust rights." *Belair Produce Co. v. Mixt Greens, Inc.*, Civ No. ELH-12-299, 2012 WL 5199421, at *3 (D. Md. Oct. 18, 2012) (quoting 7 U.S.C. § 499e(c)(3)). "A seller can preserve rights to the PACA trust by including the following statutorily required language on the face of its individual ordinary and usual billing or invoice statements:

> The perishable agricultural commodities listed on this invoice are sold subject to statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

*Id.* at *3–4 (quoting 7 U.S.C. § 499e(c)(4)) (internal quotation marks omitted).

The Court finds that Plaintiff has sufficiently alleged that it is a valid PACA trust beneficiary. First, Plaintiff asserts that between May and July of 2025, it sold wholesale quantities of "[p]roduce" to Everfresh. *See* ECF 1, at 3 ¶ 9; *see also id.* at 2 ¶ 3. Omar El Sawi, Vice President for Edward G. Rahll & Sons, Inc., explains through his affidavit that the produce Plaintiff sells is "fresh fruits and vegetables."[2] ECF 16 (affidavit of Omar El Sawi), at 1 ¶ 4; *see also* 7

---

[2] The Court may consider "affidavits and other supporting documentation" in resolving a motion for default judgment. *Joe Hand Promotions, Inc. v. Hill*, Civ. No. PX-21-557, 2022 WL 5245728, at *2 n.1 (D. Md. Oct. 6, 2022).

6

C.F.R. § 46.2(u) (defining "fresh fruits and fresh vegetables" as "all produce in fresh form generally considered as perishable fruits and vegetables"). Second, Plaintiff alleges that it "sold and delivered in excess of 2,000 pounds of Produce to Everfresh" on multiple days in May of 2025, ECF 1, at 3 ¶ 8, thus plausibly alleging that Everfresh is considered a dealer subject to PACA. Last, Plaintiff contends that it "timely preserved its interest in the PACA Trust . . . by delivering to Everfresh invoices or other billing statements . . . containing the requisite statutory language." ECF 1, at 3 ¶ 11; *see also* ECF 16, at 3 ¶ 12 (affirming that invoices were timely delivered to Defendant and contained the requisite language from 7 U.S.C. § 499e(c)(4)); *see* ECF 16-3 (copies of invoices containing the statutory language). In sum, Plaintiff avers sufficient facts to demonstrate a violation of PACA by Everfresh for failure to pay trust assets.

"PACA requires dealers to make prompt payment with respect to any transaction of produce." *Coastal Sunbelt Produce*, 2016 WL 5661558, at *4 (citing 7 U.S.C. § 499b(4)). "'Prompt payment' for produce purchased by a buyer is defined as ten days after the day on which the buyer accepted the produce." *Id.* (citing 7 C.F.R. § 46.2(aa)(5)). "If a party is injured by such a violation, that party may recover its damages from the buyer." *Id.* (citing 7 U.S.C. § 499e(a)– (b)). In this case, the produce at issue was delivered to Everfresh no later than July 12, 2025. ECF 1, at 3 ¶ 9. Nonetheless, Everfresh has failed to pay Plaintiff the total amount due for that produce. *Id.* at 4 ¶ 12; ECF 16, at 3 ¶ 14. Accordingly, Plaintiff has also adequately stated a claim that Everfresh has failed to make prompt payment in violation of PACA.

**B.    Violation of PACA by Emmanuel and Angelo Tom Toutsis (Counts 5 and 6)**

Plaintiff alleges in Counts 5 and 6 that Emmanuel Toutsis and Angelo Tom Toutsis violated PACA by dissipating trust assets and breaching their fiduciary duties. ECF 1, at 7–9. "Although

7

the Fourth Circuit has yet to address the issue, some courts of appeal have held that 'individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA.'" *P.L.U.S. Brokerage, Inc. v. Jong Eun Kim*, 908 F. Supp. 2d 711, 717 (D. Md. 2012); *see also Coastal Sunbelt Produce*, 2016 WL 5661558, at *4 ("An individual who is in a position to control the PACA trust assets and who does not preserve those assets for the beneficiaries has breached a fiduciary duty and is personally liable."). Here, Plaintiff pleads that Emmanuel and Angelo Tom Toutsis are both "officer[s], member[s], and/or manager[s]" "who controlled the operations of Everfresh and is and w[ere] in a position of control" over Everfresh. ECF 1, at 2–3; *see also* ECF 16, at 2 ¶ 7 ("Emmanuel Toutsis and Angelo Tom Toutsis are the owners, officers and/or directors of Everfresh."). Plaintiff further alleges that the Toutsises' "failure and apparent inability to pay Plaintiff demonstrates that Defendants are failing to maintain sufficient assets in the statutory trust to pay Plaintiffs and are dissipating trust assets." *Id.* at 4 ¶ 17. Such allegations are sufficient to state a claim for breach of fiduciary duty and of PACA against Emmanuel and Angelo Tom Toutsis. *Cf. Coastal Sunbelt Produce*, 2016 WL 5661558, at *4 (finding a plaintiff stated a claim for violations of PACA by alleging individual defendants were "shareholders, officers, and/or directors," "in positions of control over the PACA trust assets," and "failed to maintain the trust assets and pay plaintiff as required under the PACA").

### C.    Breach of Contract by Everfresh (Count 4)

Plaintiff also alleges that Everfresh's failure to pay the invoices for the delivered and accepted produce constitutes a breach of contract. ECF 1, at 6–7. A federal district court exercising supplemental jurisdiction applies the choice of law rules of the forum state. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). Maryland's choice-of-law rules determine which state's substantive law governs this contractual dispute. For contract

-8

claims, "Maryland applies the law of the state where the contract was made ('*lex loci contractus*'), unless the parties to the contract agreed to be bound by the law of another state." *Cotton Patch Cafe, Inc. v. Micros Sys., Inc.*, Civ. No. MJG-09-3242, 2012 WL 13005673, at *3 (D. Md. Apr. 11, 2012) (citing *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 659 A.2d 1295, 1301 (Md. 1995)). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Allegis Grp., Inc. v. Bero*, 689 F. Supp. 3d 81, 115 (D. Md. 2023) (quoting *Konover Prop. Tr., Inc. v. WHE Assocs.*, 790 A.2d 720, 728 (Md. App. 2002)), *aff'd*, No. 23-2023, 2025 WL 2141298 (4th Cir. July 29, 2025). Here, Everfresh accepted produce from Plaintiff in Maryland and therefore, Maryland law governs the claim.

"[A] breach of contract is generally defined as a 'failure, without legal excuse, to perform any promise that forms the whole or part of a contract.'" *Id.* (quoting *Weaver v. ZeniMax Media, Inc.*, 923 A.2d 1032, 1052 (Md. App. 2007)) (internal quotation marks omitted). "[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010).

Here, Plaintiff alleges that it delivered produce to Everfresh between May 17 and July 12, 2025, ECF 1, at 3 ¶ 9, and that Everfresh "received Plaintiff's Invoices" for the produce "on or about the dates indicated on the faces of the invoices," *id.* at 6 ¶ 33. Everfresh's acceptance of the produce created an enforceable contract. *Cf. Coastal Sunbelt Produce*, 2016 WL 5661558, at *4 (finding the acceptance of produce pursuant to an invoice created an enforceable contract under Maryland law). Plaintiff also pleads that Everfresh's obligation was materially breached by Everfresh's failure to "timely remit payment for the Produce it received from Plaintiff." ECF 1,

9

at 6 ¶¶ 35, 37. As such, Plaintiff has sufficiently pled facts to support its breach of contract claim against Everfresh.

### D.      Damages

Having established Defendants' liability, the Court must next determine damages. Although the Court has found that Plaintiff is entitled to default judgment on several claims, Plaintiff may not recover more than once for the same harm. Here, Plaintiff's motion for default judgment requests to recover jointly and severally from Everfresh, Emmanuel Toutsis, and Angelo Tom Toutsis, for their violations of PACA. ECF 15-1, at 3–9. Specifically, Plaintiff seeks to recover $55,319.75 in damages,[3] plus interest, and attorneys' fees and costs. *Id.* at 2.

"On default judgment, the Court may award damages without a hearing, but only if the record supports the damages requested." *Su v. iProcess Online, Inc.*, Civ. No. BAH-24-61, 2024 WL 4932657, at *5 (D. Md. Dec. 2, 2024) (citing *Clancy v. Skyline Grill, LLC*, Civ. No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012)); *see also Monge*, 751 F. Supp. at 795 (collecting cases in which damages were awarded after an entry of default judgment and without a hearing, based on affidavits, electronic records, printouts, invoices, or other documentary evidence). "The party seeking a default judgment must provide sufficient factual and legal support for its request for damages and, if appropriate, attorney's fees." *Tony Vitrano Co. v. Lanasa Produce, Inc.*, Civ. No. BAH-21-148, 2024 WL 3535026, at *5 (D. Md. July 12, 2024), *appeal dismissed sub nom. Wersant v. IOU Cent., Inc.*, No. 24-1688, 2024 WL 5346482 (4th Cir. Oct. 1, 2024).

---

[3] While the complaint alleges $77,346.75 in damages, ECF 1, at 3, the motion for default judgment seeks a lower sum of $55,319.75, ECF 15, at 1. This is of no issue because the damages sought in the motion for default judgment do not "differ in kind from, or exceed in amount, what is demanded in the pleadings." *See* Fed. R. Civ. P. 54(c).

With respect to PACA, "[c]ourts . . . treat prejudgment interest and attorney's fees as part of the sums owed when the parties have agreed to such terms by contract in the commercial transaction that gives rise to the trust." *Id.* at \*7 (citing *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002) ("PACA protects all that is due and owing in connection with the perishable agricultural commodity transaction.")). "This is because PACA requires debtor buyers of produce to hold the produce, all inventories derived from the produce, and receivables from the sale of such produce in trust 'for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the *sums owing in connection with* such transaction has been received.'" *Id.* (quoting 7 U.S.C. § 499e(c)(2) (emphasis in *Tony Vitrano Co.*)). "Parties are permitted to contract as to what is included within the 'sums ow[ed].'" *Id.* (first citing *Middle Mountain Land and Produce*, 307 F.3d at 1224–25 (holding supplier's contractual claim for attorney's fees and interest was within scope of trust claim under PACA); and then citing *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004) (finding that the term "sums owing in connection with" includes "not only the price of commodities but also . . . attorneys' fees and interest that buyers and sellers have bargained for in their contracts.")).

### 1.    Principal Amount

In support of its claim for damages, Plaintiff provides an affidavit by El Sawi, ECF 16, Everfresh's account statement, *see* ECF 16-3, at 2–10, and copies of unpaid and partially paid invoices for produce ordered by Everfresh from May 28, 2025 through July 12, 2025, *see id.* at 11–47. El Sawi asserts that between those dates, Plaintiff "sold and delivered . . . wholesale amounts of produce worth the aggregate amount of $55,319.75 to Everfresh, all of which remains unpaid." ECF 16, at 3 ¶ 11. Having reviewed El Sawi's affidavit and the accompanying documentation, the Court is satisfied that Plaintiff has provided sufficient evidence in support of

11

this figure. As noted, Plaintiff has submitted invoices from May 28, 2025 through July 12, 2025, billed to Everfresh for purchase of various produce items totaling $56,677.75. *See* ECF 16-3, at 11–47. Everfresh's account statement reflects that Everfresh made partial payments on invoices dated May 28 ($264), June 2 ($380), June 5 ($664), and June 17, 2025 ($50), resulting in a total balance owed of $55,319.75. *See id.* at 2–10. Given that the record evidence supports the claimed sum, the Court awards Plaintiff $55,319.75 for unpaid produce sold to Everfresh between May 28, 2025 and July 12, 2025, for which Everfresh, Emmanuel Toutsis, and Angelo Tom Toutsis are jointly and severally liable for violation of PACA.

     2.    Interest

In addition to the outstanding balance owed, Plaintiff seeks prejudgment interest at the rate of 6% per annum. ECF 1, at 9; ECF 15-1, at 7. However, the Court concludes that Plaintiff has not provided sufficient evidence to support an award of interest. Plaintiff argues that "an award of statutory interest at Maryland's legal rate of 6% per annum is appropriate in this matter." ECF 15-1, at 7. In support thereof, El Sawi asserts that $1,453.97 in interest is owed based on a "provision for payment of attorneys' fees and costs" included in the invoices. ECF 16, at 3 ¶ 12. Plaintiff also provides a spreadsheet for the calculation of interest. *See* ECF 16-4. Upon review, the referenced provision provides that "[i]n the event any action or proceeding is commenced to enforce the terms of this transaction or to enforce the seller's PACA trust rights, the buyer agrees to pay all costs of enforcement, *including all attorneys' fees, together with any costs and expenses*, as additional sums owed in connection with this transaction." *See, e.g.*, ECF 16-3, at 11 (emphasis added). While this term on the invoice provides for attorneys' fees, costs, and expenses, it does not specifically provide that *interest* is contractually due, nor does it specify any purported rate of interest. As such, the Court declines to award interest here. *Cf. Class Produce Grp., LLC v. Evergreen Supermarket, Inc.*, Civ. No. WDQ-12-2191, 2012 WL 5995243, at *3 (D. Md. Nov. 28,

2012) (awarding interest where the invoices included a provision specifically stating that "[i]nterest shall accrue" at a "rate of one & one half (1 1/2) percent per month"); *see also Tony Vitrano Co.*, 2024 WL 3535026, at \*8 (awarding interest where invoices provided for interest to accrue at "1.5% per calendar month from date of delivery for any unpaid balance").

### 3.    Attorneys' Fees

Plaintiff has, however, provided sufficient support for an award of attorneys' fees, though not for the full sum claimed. As noted, Plaintiff's invoices expressly provide for recovery of attorneys' fees and costs. *See, e.g.*, ECF 16-3, at 11. The court determines the reasonableness of an attorney's fee by starting with the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is commonly known as the "lodestar" method. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).

In making an inquiry into the reasonableness of hourly rates, the Fourth Circuit follows the "locality rule," whereby "[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." *Montcalm Pub. Corp. v. Virginia*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted) (internal quotation marks omitted). "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. However, in the absence of sufficient documentation, the court may rely on its own knowledge of the market." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000) (citations omitted).

As to reasonable hours, "the plaintiff 'must show that the number of hours for which [it] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary.'" *McFadden v. L&J Waste Recycling, LLC*, Civ. No. ELH-16-2744, 2017 WL 3007070, at \*7 (D. Md. July 14, 2017) (quoting *Travis v. Prime Lending*, No. 3:07cv00065,

13

2008 WL 2397330, at *4 (W.D. Va. June 12, 2008)). As such, "the party seeking fees 'has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Gonzalez v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *3 (D. Md. Sept. 2, 2011) (quoting *CoStar Grp., Inc.*, 106 F. Supp. 2d at 788).

The Fourth Circuit has also set forth factors to guide courts in determining whether a fee request is reasonable. *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The factors relevant here include "the time and labor expended," "the experience, reputation, and ability of the attorney," and "the results obtained." *Id.*; *see also Martin v. Mecklenburg Cnty.*, 151 F. App'x 275, 283 (4th Cir. 2005) (providing that a court is not required to analyze each factor individually or even examine every factor but may instead consider the factors as a whole).

Moreover, while "an attorney may recover for compensable work generally performed by paralegals at the paralegal rate," "clerical, ministerial, or administrative work should not be compensated as an award for attorney's fees, no matter who performs it." *Kubas v. 331B, LLC*, Civ. No. EA-20-2456, 2024 WL 3487890, at *4 (D. Md. July 19, 2024) (citation modified) (collecting cases). "In this District, clerical tasks include: (1) collating and filing documents with the court; (2) issuing summonses; (3) scanning, and mailing documents; (4) reviewing files for information; (5) printing pleadings and preparing sets of orders; (6) document organization; (7) creating notebooks or files and updating attorneys' calendars; (8) assembling binders; (9) emailing documents; and (10) logistical telephone calls with the clerk's office or the judge's chambers." *Jermaine G. v. Kijakazi*, Civ. No. GLS-21-2445, 2023 WL 5346140, at *5 (D. Md. Aug. 21, 2023).

14

Plaintiff requests $7,423.50 in attorneys' fees and $731.16 in expenses, totaling $8,154.66. ECF 17, at 3 ¶ 8. Plaintiff asserts that the requested fees and costs are reasonable and provides an affidavit from counsel, Mary Jean Fassett, and billing and expense records in support thereof. *See* ECF 17 (counsel's affidavit); ECF 17-1 (billing time records); ECF 17-2 (expense list). The Court has reviewed the invoices and calculates 31.3 hours billed by Fassett, and 1.1 hours billed by managing partner Louis W. Diess, III. ECF 17, at 2 ¶ 3, at 3 ¶ 8; *see* ECF 17-1. Fassett avers that her typical hourly rate is $425 per hour, but she used "a courtesy rate of $325.00 per hour for the vast majority of [her] time expended on this matter, with a reduced hourly rate of $200.00 for any work performed that was more paralegal or administrative in nature." ECF 17, at 2 ¶ 2. Diess' hours are billed at a rate of $500 per hour. *See* ECF 17-1, at 8–9, 11–12. The expense list shows $731.16 in total expenses. ECF 17-2, at 1.

Fassett asserts in her affidavit that the rates are reasonable based on counsel's "specialty and tenure for the type of work" performed in this case. ECF 17, at 2 ¶¶ 2–3. Counsel does not present additional documentation in support of the reasonableness of the billing rates, such as affidavits of other local lawyers, so the Court may rely on its own knowledge of the market to provide this information. *CoStar Grp., Inc.*, 106 F. Supp. 2d at 788. "In the District of Maryland, this market knowledge is embedded in the Guidelines" set forth in the Local Rules. *Gonzalez*, 2011 WL 3886979, at *2. This Court's Local Rules provide guidelines regarding hourly rates as follows:

> Reasonable hourly rates should be determined by the Court using declarations, affidavits, stipulations by the parties, or other evidence. A useful guideline for hourly rates may be provided by the Fitzpatrick Matrix* as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland).

Loc. R. App. B, Guideline 3 (D. Md. 2025). While fee matrices can be a "useful starting point to determine fees[,]" the court must consider all relevant evidence when assessing the reasonableness

15

of an attorney's fees and "may not elevate a matrix above all other types of evidence or treat a matrix as establishing a presumptive answer or range of answers." *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 753–54 (4th Cir. 2025) (quoting *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)). "Instead, the court must consider all relevant evidence to determine 'the prevailing market rates in the relevant community,' including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its 'own personal knowledge[.]'" *Id.* at 754 (first quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984); and then quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994)) (additional citations omitted).

The Court is satisfied that the hourly rates here are reasonable based on Counsel's affidavit as well as a cross-check with the Fitzpatrick Matrix. Fassett and Diess have been admitted to practice in Maryland for 37 and 33 years, respectively, and that level of experience is typically commensurate with a high billing rate. *See* ECF 17, at 2 ¶¶ 2–3. Both Fassett and Diess each have decades of specialized experience in litigating the specific types of claims brought here, as both have "concentrated [their] practice in matters arising under the PACA." ECF 17, at 1 ¶ 1 (providing that Fassett has concentrated her practice on PACA since 2002), at 2 ¶ 3 (providing that Diess has concentrated his practice on PACA since 1993). Indeed, the Fitzpatrick Matrix provides for rates exceeding $900 per hour for attorneys with over 30 years of experience,[4] and counsel's billing rates here are significantly below that. While the Court does not treat the Fitzpatrick Matrix as "establishing a presumptive answer," *see De Paredes*, 134 F.4th at 753–54, the fact that counsel's rates are significantly lower than the Fitzpatrick Matrix rates supports the conclusion

---

[4] *See* U.S. Atty's Off. for the Dist. of Columbia, Civ. Div., *The Fitzpatrick Matrix*, https://www.mdd.uscourts.gov/sites/mdd/files/fitzpatrick-matrix.pdf   [https://perma.cc/EGT6-HDF9].

16

that counsel's rates are reasonable. Moreover, that Fassett billed at a reduced hourly rate for the majority of the hours worked further bolsters the reasonableness of her rates. *Cf. Bobb v. FinePoints Priv. Duty Healthcare, LLC*, 794 F. Supp. 3d 343, 361 (D. Md. 2025) (noting that a "five percent across-the-board reduction in hours billed" supported the reasonableness of fees). Considering all the relevant evidence, the Court concludes that the billing rates are reasonable here.

The Court also concludes that the number of hours worked—which has included the default judgment process and ultimately a successful judgment in Plaintiff's favor—is reasonable. Plaintiff's counsel billed for 31.4 hours of work in this matter and the billing records show the time and effort required of counsel in this suit. *Wei v. Xu*, Civ. No. 21-601-ELH, 2022 WL 1422926, at *14–15 (D. Md. May 4, 2022) (determining that for an uncontested default judgment, 72 hours of work was reasonable). The record reflects specificity in the routine legal work done by counsel over approximately six months including corresponding with the Plaintiff, researching and drafting motions, preparing affidavits, and conferring with Defendants. *See, e.g.*, ECF 17-1, at 3 (reflecting time spent drafting the motion for default judgment and preparing counsel's affidavit), at 5 ("Email from/to Angelo Toutsis re settlement agreement"). "This time, even if some of it was expended pre-suit, appears compensable as it was reasonably expended on the litigation." *Schrider v. Devlin Contracting & Maint., Inc.*, Civ. No. BAH-24-2978, 2026 WL 110330, at *6 (D. Md. Jan. 14, 2026) (quoting *Harwood v. Am. Airlines, Inc.*, 37 F.4th 954, 961 (4th Cir. 2022)) (internal quotation marks omitted); *see also Ibn-Queen v. T.I.M.E. Org., Inc.*, Civ. No. DLB-20-3501, 2021 WL 1890622, at *3 (D. Md. May 11, 2021) (permitting an award of attorneys' fees for tasks including "time spent investigating plaintiff's claims, attempting pre-suit settlement negotiations, conferring with the plaintiff regarding the facts underlying his claims and

settlement negotiations, analyzing plaintiff's potential damages, and negotiating the settlement"). Moreover, counsel "exercised [her] professional discretion to not charge or bill [Plaintiff] for certain tasks performed." ECF 17, at 2; *see also, e.g.*, ECF 17-1, at 5 (showing three billing entries for which Plaintiff was not charged). Foregoing "billing for certain compensable activities" further supports the reasonableness of the hours here. *See Bobb*, 794 F. Supp. 3d at 361.

However, the Court observes that certain hours billed reflect non-compensable administrative tasks. Specifically, entries associated with "[a]ttention to electronic file," ECF 17-1, at 3, "[e]lectronic file maintenance," *id.* at 6, and three entries related to time spent submitting court filings, *see id.* at 6, 10, correspond with non-compensable clerical tasks. These entries total 1 hour of work billed at $200 per hour, and 0.1 hour of work billed at $325 per hour. *See id.* at 3 (entry for 0.2 hours of file management at $200 per hour on October 17, 2025), at 6 (entries for 0.1 hour of electronic file maintenance at $200 per hour and 0.1 hour of court filing at $325 per hour on August 29 and September 1, 2025), at 10 (entries for 0.1[5] and 0.6 hours of court filing at $200 per hour on August 1, 2025). Accordingly, a total of $232.50 will be struck from the fee award as non-compensable time. *Cf. Molina v. KP Stoneymill, Inc.*, Civ. No. GLS-19-3123, 2021 WL 2805838, at *6 (D. Md. July 6, 2021) (striking non-compensable clerical work from a fee award). Accordingly, the Court awards attorneys' fees in the amount of $7,191.

4.    Costs

Finally, Plaintiff requests reimbursement of $731.16 in costs. ECF 17, at 3 ¶ 8; ECF 17-2, at 2. "The Court has the discretion to determine costs that will be assessed against a losing defendant." *Kubas*, 2024 WL 3487890, at *6 (citing *Roy v. Cnty. of Lexington*, 141 F.3d 533, 549

---

[5] This entry on the billing statement reflects 0.2 hours worked for both submitting the complaint (0.1 hours) and emailing Plaintiff (0.1 hours). ECF 17-1, at 10. The Court will strike only the time spent submitting the complaint, 0.1 hours, from the fee award.

(4th Cir. 1998)). Costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Service of process, filing fees, and attorney admission costs, among other things, are reimbursable. *Butler v. PP&G, Inc.*, Civ. No. JRR-20-3084, 2023 WL 6517593, at *4 (D. Md. Oct. 5, 2023). The Court is satisfied that the costs requested here are reasonable and recoverable, as they are associated with reimbursable expenses such as service of process, legal research, and a filing fee. *See* ECF 17-2, at 2. Accordingly, the Court awards the requested costs of $731.16.

In sum, the Court awards the following: $55,319.75 in damages for the principal amount of unpaid produce; $7,191 in attorneys' fees; and $731.16 in costs, for a total of $63,241.91 for which Everfresh, Emmanuel Toutsis, and Angelo Tom Toutsis are jointly and severally liable.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment, ECF 15, is GRANTED, and judgment is entered against Everfresh, Emmanuel Toutsis, and Angelo Tom Toutsis. The Court awards damages ($55,319.75), plus attorneys' fees ($7,191) and costs ($731.16), totaling $63,241.91, for which Defendants are jointly and severally liable.

A separate implementing order will issue.

Dated: May 22, 2026 

/s/
Brendan A. Hurson
United States District Judge

19